# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2017 DEC -8 AM II: 39

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) | Case No. **3 : 17 mj 571** |
| 129 SOUTH KING STREET XENIA, OHIO INCLUDING ALL OUTBUILDINGS AND CURTILAGE | | MICHAEL J. NEWMAN |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | possession of controlled substance/distribution of controlled substances |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA PATRICK GRAGAN, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12/8/17__

_____
*Judge's signature*

City and state: DAYTON, OHIO _____

MICHAEL J. NEWMAN U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT "A"

## DESCRIPTION OF LOCATION TO BE SEARCHED

**129 South King Street, Xenia, Ohio 45385,** is a two-story tan-colored brick residence as depicted in the photograph below.   The numbers "129" appear above the entry way.



## ATTACHMENT "B"

## PROPERTY TO BE SEIZED

A.    Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B.    Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C.    Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D.    Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E.    Electronic equipment such as pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios.

F.    United States currency, precious metals, coins bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G.    Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H.    Indicia of occupancy, residency, and/or ownership of the premises, and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, vehicle registrations and documentation regarding storage units/lockers.

I.    Illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade.

J.    Firearms and ammunition.

# AFFIDAVIT

Your Affiant, Patrick Gragan, being duly sworn, do hereby depose and state as follows:

## I.

## INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since May 2016. I am currently assigned to the Cincinnati Division, Dayton Resident Agency. As such, I am charged with investigating crimes against the United States, including but not limited to violations of Title 18 and Title 21 of the United States Code (U.S.C.). I have received training in drug trafficking investigations and have participated in narcotics-related investigations that involved surveillance, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics. I am familiar with federal drug laws, and am aware that it is a violation of Title 21, U.S.C., Section 841(a)(1) to distribute and possess with intent to distribute controlled substances (including heroin and fentanyl).

## II.

## PURPOSE OF AFFIDAVIT

2. I make this affidavit in support of an arrest warrant for **ANTHONY A. HILL ("HILL")** for committing a violation 21 U.S.C. § 841(a)(1), distribution of controlled substances. The information contained in this Affidavit is largely based upon an investigation conducted by myself and other law enforcement officers. All of the details of the investigation are not included in this Affidavit, rather only information necessary to establish probable cause for the violation set forth below.

3. I also make this affidavit in support of a search warrant for each of the following premises as there is probable cause to believe that evidence, contraband, fruits of a crime, other items illegally possessed as well as property designed for use, intended for use, or used in committing a violation of 21 U.S.C. § 841(a)(1) distribution and possession with intent to distribute controlled substances. A list of the specific items to be seized from each of the premises is attached hereto as Attachment B and incorporated herein by reference. Based on my training and experience, as described above, I believe that there is probable cause to believe that the items listed in Attachment B will be found at the premises described in Attachment A. All of the details of the investigation are not included in this Affidavit, only information necessary to establish probable cause that evidence associated with narcotics offenses is located in each of the premises.

a. **129 South King Street, Xenia, Ohio**, including any outbuildings and curtilage at this location. This premises is more fully described in Attachment A and is incorporated herein by reference.

b. **Silver Jeep Cherokee, bearing Illinois registration E183233 registered Anthony Hill.**

4. Based on my aforementioned training and experience, I am familiar with the modus operandi of persons involved in the illicit distribution of controlled substances and as a result, knows the following:

a. It is common practice for drug traffickers to hide their assets, their addresses, their telephone numbers and cellular services by using other person's names in order to avoid detection by law enforcement officials.

b. It is common practice for drug traffickers to often maintain residences which are used as "stash houses" or locations for drug storage and distribution, and use "nominees" to obtain telephone service, utility service, and other services to hide the true identity of the owner or person who will use that service.

c. That drug traffickers often place assets in corporate entities in order to avoid detection of those assets by law enforcement officials.

d. It is common practice, that even though these assets are in nominee names, drug traffickers will continue to utilize these assets by exercising dominion and control over them.

e. It is common practice that drug traffickers possess large amounts of U.S. Currency in order to finance their ongoing illicit drug business.

f. It is common practice that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation and distribution of drugs. Drug traffickers commonly front (provide drugs on consignment) to their clients. The books, records, receipts, notes, ledgers, and other documents are kept where the drug traffickers have ready access to them.

g. It is common for drug traffickers to provide false information to law enforcement officials regarding their identity and the address of their actual residence.

h. That persons involved in drug trafficking conceal from law enforcement in their residences, vehicles, and businesses the following items: drugs, large amounts of currency, financial instruments, jewelry, automobile titles, other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to the acquisition and concealment of large sums of money resulting from drug trafficking activities.

2

i.  When drug traffickers amass large proceeds from the sale of drugs, they attempt to hide the true source of these profits, otherwise known as laundering the money. To accomplish this, drug traffickers many times utilize banks and/or financial institutions with their attendant services, including but not limited to, cashier's checks, money drafts, and letters of credit. Other entities used to launder drug proceeds include real estate firms and purported legitimate business fronts.

j.  Drug traffickers commonly travel to facilitate their trafficking activities. After purchasing drugs, traffickers commonly transport, or cause to be transported, drugs to areas in which they will be distributed. Common methods of transportation include, but are not limited to, commercial airlines, and rental/private automobiles.

k.  It is common practice that drug traffickers commonly maintain books and similar documents which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization. This information can often be stored in cellular phones in places such as the contacts list.

l.  Drug traffickers often take, or cause to be taken, photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained at the residences and/or businesses of drug traffickers. Photographs such as these can commonly be found and stored in cellular phones.

m.  Drug traffickers commonly have in their possession, (that is on their person, at their residence, and/or their business) weapons, including firearms of various types. Firearms are used to protect and secure a drug trafficker's property which may include, but is not limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and U.S. Currency.

n.  Drug traffickers frequently maintain hidden compartments within their residence and vehicles to hide drug trafficking evidence (money, ledgers, drugs, etc.), bury evidence in containers such as shoe boxes, or hide the evidence in safes.

o.  The exact quantities, prices, dates, and methods of delivery of drugs are seldom discussed in detailed terms over the telephone. These details are usually agreed upon during face-to-face transactions. For this reason, most telephone conversations regarding drugs are very brief and often in code, understood by the traffickers and designed to mislead or confuse non-participants of the conversations. Drug traffickers make extensive use of cellular phones and text messaging beepers/pagers to facilitate contacting one another. When calling a beeper or text messaging, traffickers commonly input the number that should be called and sometimes add additional instructions in the form of additional digits. The structure of a drug distribution organization usually consists of sources of supply, wholesale distributors, retail distributors, and the ultimate consumers. The wholesale distributors often have more than one source of supply, and likewise the retail distributors often obtain drugs from more than one wholesale distributor. After receiving a quantity of drugs, the source of supply will often move the drugs

to a location other than where he/she sells them to the wholesale distributors. The location of the source of supply's so-called "stash house" is generally a well-guarded secret known only to the source of supply and his closest associates. Most of the drugs, as well as diluting and packaging materials and weighing equipment, are usually kept at the "stash house." Only those amounts needed for immediate sale are usually kept at the point of sale.

p.      Drug traffickers frequently use rental vehicles for everyday travel and will maintain another vehicle, usually at an out of sight location, to facilitate their drug trafficking business.

q.      Evidence of past communication between drug traffickers can be found in saved or deleted text messages, call logs, and other forms of electronic communication occurring over, stored in, or accessed by the cellular phone.

r.      I have repeatedly encountered a practice wherein drug traffickers distribute a cellular telephone number to their drug customers, often described by traffickers as a "money phone." The money phone is used primarily to communicate with those customers. The customers will subsequently call the trafficker on that cellular telephone number to arrange a purchase of drugs as needed. The trafficker will many times field calls from several customers at once, and then direct all those customers to travel in their car to a designated meeting point. Once all the customers have driven to the designated place, the drug trafficker will appear in his vehicle, quickly conduct hand to hand drug transactions with each customer, and then drive away.

## III.

## FACTS SUPPORTING PROBABLE CAUSE

5.      On December 5, 2017, law enforcement responded to an address in Xenia, Ohio on a report of an overdosed subject. Upon arrival, law enforcement observed the victim down on the bathroom floor. Law enforcement observed the following items in the bathroom: a syringe, a foil bindle containing suspected heroin/fentanyl, a blue tourniquet and a spoon with cotton and suspected heroin/fentanyl residue. Law enforcement assembled Narcan for use and administered two doses of Narcan. Once Xenia Fire Department arrived on scene, medics administered a third dose of Narcan. Once in the back of the ambulance, the victim came to and was willing to answer questions. The victim stated a black male named "Tone" was the dealer he/she purchased the heroin from which resulted in the victim's overdose. "Tone" was later identified as Anthony **HILL** (**HILL**). The victim said **HILL** drove a silver Jeep with Illinois registration to deliver the heroin. The victim provided "Tone's" phone number and opened up his/her phone and allowed law enforcement to read and take photos of the text message conversation involving the deal.

6.      Continuing with the interview, the victim provided the following information to law enforcement: The victim purchased cocaine several times from **HILL** between May 2017

and August 2017. The victim usually spent $40 each deal. Approximately one week ago, **HILL** texted the victim that he had "girl" (a term commonly used for cocaine) and "boy" (a term commonly used for heroin). The victim agreed to purchase heroin and **HILL** had another individual drop off the drugs to the victim in Xenia, Ohio. On the morning of December 5, 2017, the victim contacted **HILL** by telephone to purchase heroin. **HILL** delivered the heroin to the victim's residence. The victim stated the drugs delivered did not appear to be heroin as it was white in color. The victim knew once taken, it was not heroin and stated "It hit me hard." The victim further stated **HILL** lived somewhere near South Galloway Street and West Second Street in Xenia, Ohio.

7.  A search of a police database revealed that **HILL** resided at **129 South King Street, Xenia, Ohio**. On December 5, 2017, at approximately 3:30p.m., law enforcement, located a silver **Jeep Cherokee with Illinois registration E183233** in the driveway of **129 South King Street, Xenia, Ohio**. The registered owner of the **Jeep Cherokee** was **HILL**. Law enforcement showed the victim a photograph of **HILL** from the Xenia Police records data base and the victim confirmed **HILL** was the dealer.

8.  On December 6, 2017 your Affiant and other law enforcement officials met with the victim who agreed to cooperate in a controlled purchase with **HILL**. Law enforcement searched the victim's person before and after the drug transaction and no contraband was found. The victim was provided pre-recorded buy money and was monitored. Law enforcement drove the victim to the area of the agreed upon deal location in Xenia, Ohio. Prior to the deal, law enforcement were in the area to provide surveillance and security. At the direction of law enforcement, the victim communicated with **HILL** by telephone. **HILL** offered to sell the victim $40 worth of heroin. The victim asked if it was the same stuff he/she had bought yesterday. **HILL** replied "Yeah, it's always been the same shit."

9.  Prior to the deal taking place, law enforcement also conducted surveillance at **HILL's** residence located at **129 S. King Street, Xenia, Ohio**. Shortly after the victim and **HILL** communicated, **HILL** was observed leaving his residence driving a **silver Jeep Cherokee bearing Illinois registration E183233**. A couple of minutes later your Affiant observed **HILL** turning onto the street where the deal location was located. Law enforcement observed **HILL** arrive at the deal location and the victim entered the front passenger seat of the **Jeep Cherokee**. The victim exchanged the money for the purported heroin. The victim exited **HILL's** vehicle and **HILL** left the area. The victim entered a law enforcement vehicle and immediately handed law enforcement the foil bindle containing the purported heroin. A post interview was completed where the victim confirmed he/she exchanged the recorded buy money for heroin with **HILL**.

10. The foil bindles from the December 5, 2017 overdose and the December 6, 2017 buy were similar in nature and both contained a white powdery substance. Due to the hazardous nature of fentanyl, field tests were not conducted. The substances were submitted as evidence to the Miami Valley Regional Crime Laboratory (MVRCL) on December 7, 2017 for testing.

11. On December 8, 2017, MVRCL provided verbal confirmation that the residue from the spoon from the December 5, 2017 overdose tested positive for fentanyl. The residue from the foil bindle from the same day tested positive for cocaine and fentanyl. The substance

contained in the foil bindle from the buy on December 6, 2017 tested positive for fentanyl. Fentanyl is a Schedule II controlled substance.

## IV. **CONCLUSION**

12. Based on the facts set forth in the Affidavit, I believe there is probable cause to believe that, in the Southern District of Ohio and elsewhere, during the times referenced above, **HILL** knowingly and intentionally distributed a mixture or substance containing a detectable of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

13. Based on the facts set forth in the Affidavit, I further believe there is probable cause to believe that evidence, contraband, fruits of a crime, other items illegally possessed as well as property designed for use, intended for use, or used in committing violations of 21 U.S.C. § 841(a)(1) (distribution and possession with intent to distribute a controlled substance) will be located in each of the following:

   a. **129 SOUTH KING STREET XENIA, OHIO,** including all outbuildings and curtilage at this location.

   b. **SILVER JEEP CHEROKEE, BEARING ILLINOIS REGISTRATION E183233 REGISTERED TO ANTHONY HILL**.

Patrick Gragan
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this _8th_ day of December, 2017.

MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE